## THE STATE OF KANSAS v. MICHAEL ROGERS.

CRIMINAL LAW; *Self-Defense.* Where one commences an altercation with another, and strikes his adversary with his hand, with no purpose or design to kill or cause great bodily injury to him, and his adversary repels such assault with a deadly weapon, and after the assailed has shot and wounded the assailant, and has retired behind a wall, and the assailant ceases to follow, but has neither retreated or attempted any abandonment of the conflict, *held,* that the assailant is not justi-fied in defending his own life to the taking the life of the other, even if the assailed attempts at the time to shoot the assailant.

### Appeal from Dickinson District Court.

ROGERS was charged by information with murder for kill-ing one *Leggett.* He was tried at the September Term 1876, of the district court, and convicted, and sentenced to impris-onment in the penitentiary for ten years. He now brings the case here by appeal, alleging error in refusing instruc-tions asked by his counsel. The instructions refused, and the facts, are stated in the opinion.

*McClure & Humphrey,* for appellant.
*Willard Davis,* Attorney-General, for The State.

The opinion of the court was delivered by

HORTON, C. J.: The appellant was charged by information with murder in the first degree in killing John Leggett, and upon trial was found guilty of murder in the second degree, and sentenced to the penitentiary for ten years. From that conviction and sentence he has appealed to this court. The single error assigned is the refusal of the court below to give the following instructions:

"If the jury find from the evidence that the defendant, in an altercation between them, commenced by the defendant, struck the said Leggett with his hand, with no purpose or design to kill or cause great bodily injury to said Leggett, said Leggett had no right to repel such assault with a deadly weapon; and if he did so, and after he had shot and wounded the defendant, and had retreated behind a wall, and the defendant had ceased to follow him, (if the jury so find,) said Leggett again shot or attempted to shoot at defendant, the defendant was justified in defending his own life, even to the taking of the life of said Leggett."

Two inquiries are suggested in the case presented to us for consideration. First, was there evidence before the jury which rendered it necessary or proper, supposing the instruction requested to contain a correct statement of the law in the abstract, to give it to the jury? and second, is it objectionable as a statement of law? We first recur to the evidence. Louis Bruno testified that on the morning of 5th May 1876, he was in Phillips' saloon in Abilene, Dickinson county; "that Rogers was there, and Leggett was tending the bar; that Rogers asked for a glass of whisky for himself and partner; Leggett said he could not have any; Rogers asked why. Leggett told him he had done everything he could do against the house, besides, he had stolen some checks, silver spoons, and cards. Rogers said he was a damned liar—that he had not taken those things. Leggett told him he could prove it by a man that was sitting in the house, then. Leggett called on me to prove it, and Rogers asked me if I had seen him take the checks or spoons, and I told him I had not. Rogers said to Leggett, 'You have accused me of taking those

things, and I will make you dance to my music.' Leggett answered 'that he wanted no trouble with him whatever,' and said, 'for God's sake do let me alone, and it is all right.'"
Several witnesses for the prosecution testified substantially that on May 6th, the day after the above controversy between Rogers and Leggett, Rogers came into Carpenter's restaurant, in Abilene, about noon; that Leggett was in the room, sitting in his chair after eating his dinner, as Rogers came in the door; that Rogers walked up to him and accused him of talking about him; that Rogers shook his fist in his face, and said he had better keep his damned mouth shut about him; that Leggett rose up; that a few words passed between them, and then Rogers struck Leggett in the face; that Leggett staggered and ran backward about fifteen feet, into the kitchen; that during the altercation Leggett told Rogers to keep away from him, that he wanted nothing to do with him; that Rogers followed him to the door, and as he got to the door, he put his hand in his pocket and told Leggett to draw his six-shooter and shoot if he wanted to. About that time Rogers drew his pistol. There was a shot fired. As the shot was fired, Rogers winced back a little, and then Rogers presented his pistol to fire; and just before he fired there was a second shot, fired by Leggett. After Rogers fired, Leggett fell, in the kitchen. Leggett told Rogers to keep away from him — he wanted nothing to do with him. Rogers did not retreat back any after he struck Leggett, until he fired; Rogers shook his fist in Leggett's face, and said he (Leggett) had better keep his damned mouth shut. The bullet from Rogers' pistol entered Leggett's left temple on the side of the head, and Leggett died from the effect of such pistol shot about August 28th 1876. Rogers took his pistol out of his pants pocket. The pistol shots were quite close together, not more than a minute from the first to the last shot. The last two pistol shots were almost simultaneous. Some of the witnesses testified that Rogers drew his pistol out of his pocket before the first shot was fired. On the part of the defense, the only witnesses who testified

to the altercation in Carpenter's restaurant on the 6th of May were the defendant, and Thomas Smith. The testimony of the prisoner was to the effect that he went into Carpenter's to eat dinner. As he walked toward the table he saw Leggett, and he advanced toward where he was sitting; he told him he had been talking very harshly about him, and he wanted Leggett to take it back; that Leggett started to rise out of his chair, and as he rose, his hand was in his pants pocket, drawing his pistol; that he saw Leggett's pistol as he drew it out and made an effort to knock the pistol out of Leggett's hand; the pistol went off, it struck the prisoner near the waist; Rogers' hand struck Leggett on the shoulder; that Leggett retired then back to the kitchen door; as he got to the kitchen door he fired again. Rogers was six or eight feet from him; the second shot struck Rogers in the abdomen; that then he put his hand into his coat pocket and drew his pistol; that Leggett fired the second shot near the dining-room door, while yet in the dining-room, and Rogers was then six or eight feet from him. After the second shot Leggett stepped into the kitchen; he was out of Rogers' sight; when Rogers drew his pistol he held it in front of him. After Leggett retreated behind the door of the kitchen, his left shoulder and right hand came in sight, and his head leaned out so he could see. Rogers then shot, Leggett fell, and his pistol dropped; that he shot Leggett because of the motions he had made, and the attitude he had taken, and to save his own life; that he did not shoot him for shooting the first or the second time; that Leggett retreated twelve or fourteen feet; that he followed to get the pistol. The evidence of Smith, who was invited by Rogers to go to Carpenter's to dinner that day, was similar to that of Rogers as to the commencement of the altercation. He also testified that, from where Leggett sat at the time Rogers spoke to him, to the kitchen door to which Leggett retreated, was about eighteen feet, and that Rogers was following Leggett, when Leggett shot the second time; that Rogers drew his pistol from his coat pocket as he was passing the end of the din-

ing-room table; that between the second shot of Leggett, and Rogers' shot, there was so short a time that no one could tell which shot first; that he heard Rogers say, on May 5th, he would give Leggett a thumping; also heard him say he would lick him; that Rogers was a heavier and stouter man than Leggett, and witness thought when Rogers came in that the fuss was coming to a focus. This witness called Leggett's pistol a small pop-gun, and one of the Smith & Wesson pattern.

The court in its general charge instructed the jury on the state of the evidence as claimed by the prosecution, that, "It is for the jury to decide from the evidence whether the defendant had reasonable cause to apprehend danger to his life, or some great personal injury, and whether at the time he fired the shot he was in immediate danger of his life or some great bodily harm or injury from the deceased, from which he reasonably supposed he could not escape except by disabling the deceased, or by taking his life. In such a case he would be entitled to acquittal. But when a party claims a justification for killing his adversary, it must not be in a combat of his own seeking; nor when he provokes another to commence an affray for the purpose of having a pretext to take the life of his assailant. And if a man for the purpose of bringing another into a quarrel provokes him so that an affray is commenced, and the person causing the quarrel is over-matched, and to save himself from apparent danger kills his adversary, he would not be justifiable; because the necessity being of his own creating shall not operate in his excuse." At the instance of the defendant the court also instructed the jury that, "If the jury find from the evidence that in an altercation of words between the defendant and the deceased, said Leggett made an assault on the defendant with a deadly weapon or loaded pistol, and shot at and wounded the defendant, and that while the said Leggett was endeavoring to shoot defendant again, he shot said Leggett and caused a wound which produced the death of said Leggett, the defendant acted in self-defense, and was justifiable."

We do not think the instruction refused either necessary, or proper. It might have misled the jury. In our view, the evidence does not show that Rogers ceased to follow Leggett, in the full significance that these words imply. A cessation on the part of Rogers to advance for a single moment, does not show he had given up the pursuit, or had ceased to follow. In one aspect of the case, Rogers ceased to advance, just as he shot; but before this, his pistol was in his hand in front of him, and the fatal bullet was fired by Rogers almost instantaneously with the second shot of Leggett. The instruction contradicts the theory of the defense, that Leggett first made an assault on the defendant, and concedes that the prisoner commenced the altercation, and struck the deceased first with his hand. All the evidence shows that Leggett retreated; that he retired from fifteen to eighteen feet; that he was literally trying to escape from the presence of Rogers; that Rogers made no attempt to shun the combat; that he advanced to the time that Leggett obtained mere temporary shelter behind the door or partition of the kitchen, but shot the moment Leggett presented his arm and head therefrom. Nowhere in the altercation did Rogers manifest sufficient good faith on his part to remove the apprehension of his adversary. Had he exhibited, after the first blow was struck, half the diligence that Leggett did to avoid further encounter, it is more than probable that Leggett would have been saved from an untimely death, and the prisoner from a long confinement in prison. Rogers testified that he followed up Leggett, but gave the excuse that he wished to disarm his opponent. Of the two, Rogers was the abler and stronger; he had the more physical strength, yet he made no effort to retreat, no attempt to escape from Leggett; and he hesitated only, when he supposed his antagonist was in a position to render his further advance dangerous; that hesitation was for a moment only; when the opportunity offered, the bullet from his ready pistol, fired with his own hand, pierced the temple of Leggett, and the latter fell with a fatal wound.

But if we have mistaken in any way the evidence presented

in the record, still we think the instruction refused ought not to have been given, as it is objectionable as a statement of law. The instruction assumes that Rogers followed Leggett, after commencing the altercation, and striking him with his hand, and assumes no explanation of his ceasing to pursue. The words, "and the defendant had ceased to follow him," are not broad enough in their import; are not sufficiently expressive of any intention on the part of Rogers to abandon the conflict. He may for the instant have ceased to follow, to gain fresh strength, or some new advantage for the attack. If the instruction is based upon the view that Rogers had repented, and was ceasing his pursuit, preparing to flee, then there is no assumption in the instruction that Rogers had done "works meet for repentance." We do not hold, that when one person, with no felonious intent, but simply for the purpose of inflicting a personal chastisement, strikes another with his hand, he has absolutely forfeited all right to exist, as the able counsel for the appellant suggests must be the result, if this instruction be held not good law. In discussing the question of self-defense Lord Hale says: "Supposing that A. by malice makes a sudden assault upon B., who strikes again, and pursuing hard upon A., A. retreats to the wall, and in saving his own life kills B.; some have held this to be murder, and not *se defendo*, because A. gave the first assault. But Mr. Dalton thinketh it to be *se defendo*, though A. made the first assault, either with or without malice, and then retreated. It seems to me that if A. did retreat to the wall upon a real intent to save his life, and then merely in his own defense killed B., that it is *se defendo*. But if on the other side, A., knowing his advantage of strength, or skill, or weapon, retreated to the wall merely as a design to protect himself under the shelter of the law, but really intending to kill B., then it is murder, or manslaughter, as the circumstances of the case require." 1 Hale's P. C., 479, 480. Again: "If A. assaults B. first, and upon that assault B. re-assaults A., and that so fiercely that A. cannot retreat to the wall or other *non ultra* without danger of his life; nay, though A.

fall upon the ground upon the assault of B., and then kills B., this shall not be interpreted to be *se defendo,* but to be murder, or simple homicide, according to the circumstances of the case; for otherwise we should have all cases of murders or manslaughters by the way of interpretations turned into *se defendo.*" 1 Hale P. C. 482.

What acts have been held so far to abridge a man's right of defense, that if he thereupon kill another, he cannot be acquitted of all crime, see *State v. Starr,* 38 Mo. 270; *State v. Hill,* 4 Dev. Bot. 491; *Vaiden v. Commonwealth,* 12 Gratt. 717; *Adams v. The People,* 47 Ill. 376; *Haynes v. The State,* 17 Ga. 465; *Commonwealth v. Drum,* 58 Pa. St. 9; *Staffer v. State,* 15 Ohio St. 47; *Stuart v. State,* 1 Ohio St. 66.   The authorities uniformly hold that the person who first commences a malicious assault, then continues to advance as the assailed retreats, or does not in good faith attempt, so far as he can, to withdraw from the combat, and abandon the conflict, cannot justify taking the life of his adversary, however necessary it may be to save his own, and must be deemed to have brought upon himself the necessity of killing his fellow-man.   We see no reason from the authorities cited by counsel, or the argument presented in behalf of the appellant, in any way, to loosen these well-settled principles so salutary to prevent altercations, and to save human life.   The mere striking of one person by another with the intention to commit only a personal chastisement, is almost sure to be followed by a dangerous, if not deadly result, where the parties are armed with deadly weapons, as in this case; and while the carrying of the pistol loaded for use cannot be too severely censured, too strongly condemned, it is unfortunately a too prevalent custom to be wholly ignored, or to suppose that an encounter between two persons hostile to each other will only result, after a blow is given by the first, in a combat with fists.   The blow from the one is often followed by the pistol-shot from the other.   The assailant places himself in peril when he makes the assault; and when he is in fault, and calls down upon himself the vengeance of the assailed, he cannot be jus-

tified under the law when he has not actually "put into exercise the duty of withdrawing from the place."

Under the instructions refused, a person armed with a deadly weapon, who commences an altercation, commits a personal chastisement on another, advances as the other retreats, and only ceases to follow in order to watch the acts of his adversary, and anticipating the shot of his opponent, kills the assailed by the quickness of his movements, is freed from all blame, and stands justified, because his antagonist in his retreat too fiercely returns the assault, and, having succeeded by flight to reach a door or partition from behind which he seeks to defend himself while he has reasonable grounds of apprehension that he is in imminent danger. Such is not the law. The instruction not given does not place the appellant in a fitting position at the time he gave the mortal wound for the law to say he was remitted to his right of self-defense.

The judgment of the court below must be affirmed.

All the Justices concurring.