## ACERS v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 393. Submitted October 22, 1896. — Decided November 30, 1896.

The exceptions to this charge are taken in the careless way which prevails in the Western District of Arkansas.

In a trial for assault with intent to kill, a charge which distinguishes between the assault and the intent to kill, and charges specifically that each must be proved, that the intent can only be found from the circum-stances of the transaction, pointing out things which tend to disclose the real intent, is not objectionable.

There is no error in defining a deadly weapon to be "a weapon with which death may be easily and readily produced; anything, no matter what it is, whether it is made for the purpose of destroying animal life, or whether it was not made by man at all, or whether it was made by him for some other purpose, if it is a weapon, or if it is a thing by which death can be easily and readily produced, the law recognizes it as a deadly weapon."

With reference to the matter of justifying injury done in self-defence by reason of the presence of danger, a charge which says that it must be a present danger, "of great injury to the person injured, that would maim him, or that would be permanent in its character, or that might produce death," is not an incorrect statement.

The same may be said of the instructions in reference to self-defence based on an apparent danger.

THE case is stated in the opinion.

*Mr. A. H. Garland* and *Mr. R. C. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

Plaintiff in error was convicted in the District Court for the Western District of Arkansas of an assault with intent to kill, and sentenced to the penitentiary for the term of two years and six months. The undisputed facts were these: Defendant and one Joseph M. Owens had some dispute about business affairs, and while returning together to the house where they were both stopping, defendant picked up a stone about three inches wide, nine inches long and an inch and a half or two inches thick, and with it struck Owens on the side of the head, fracturing the skull. The defence was that there was no intent to kill; that defendant acted in self-defence; that, believing Owens was about to draw a pistol, he picked up the stone and pushed him down; and the disputed matters were whether Owens had a pistol, and if so, whether he attempted to draw it, or made any motions suggestive of such a purpose. The verdict of the jury was adverse to the contentions of the defendant.

The only questions presented for our consideration arise on the charge of the court, and may be grouped under four heads: First, as to the evidences of intent; second, as to what constitutes a deadly weapon; third, as to real danger; and, fourth, as to apparent danger. It may be premised that the exceptions to this charge are taken in the careless way which prevails in the Western District of Arkansas; but passing this and considering the charge as properly excepted to we find in it no substantial error.

First. With reference to the charge as to the matter of intent, counsel for plaintiff in error challenge a single sentence, as follows: "But you need not go to a thing of that kind, because the law says you may take the act itself as done, and from it you may find that it was wilfully done." But this sentence is to be taken, not by itself alone, but in connection with many others, in order to determine what the court instructed as to the evidences of intent. It distinguished between the assault and the intent to kill, and charged specifically that each must be proved, that the intent could only be found from the circumstances of the transaction, and, after suggesting that the declarations made by a party at the time of an assault would tend to show the intent with which it was committed, added the sentence which counsel have quoted. Nowhere, not even in the sentence quoted, was it said that the assault of itself necessarily proved the intent, but all through the charge in this respect was the constant declaration that the intent was to be deduced from all the circumstances of the case, the court pointing out many things which tended to disclose the real intent of a party, summing up the matter with these observations: "That is the way you find intent, then, bearing in mind that he is held to have intended whatever consequences might have followed from the act as wilfully done by him with the deadly weapon. You, in other words, to find intent, take the circumstances; you take the character of the act done, the manner in which it was executed, the weapon used in executing it, the part of the body upon which it was executed, the very result produced by that act upon that vital part of the body known as the

head. These are all circumstances that it is your duty to take into consideration to find whether the party intended to kill him or not." There is nothing objectionable in this.

Second. With respect to a deadly weapon, the court defined it as " a weapon with which death may be easily and readily produced; anything, no matter what it is, whether it is made for the purpose of destroying animal life, or whether it was not made by man at all, or whether it was made by him for some other purpose, if it is a weapon, or if it is a thing with which death can be easily and readily produced, the law recognizes it as a deadly weapon." We see nothing in this definition to which any reasonable exception can be taken. Nor do we find anything in the subsequent language of the court which in any manner qualifies this definition, or can be construed as an instruction to the jury that as matter of law the stone actually used was a deadly weapon. It is true reference was made to the manner in which the stone was used and the part of the body upon which the blow was struck as considerations to aid the jury in determining whether it was properly to be considered a deadly weapon. We have so little doubt that when one uses a stone of such size and strikes a blow on the skull so severe as to fracture it, a jury ought to find that the stone was a deadly weapon, that if the court had expressed a definite opinion to that effect we should have been reluctant on that account alone to have disturbed the judgment. But the court did not so express itself, and in calling attention to the manner of its use and the part of the body upon which the blow was struck it only properly called the attention of the jury to circumstances fairly to be considered in determining the character of the weapon. *United States* v. *Small*, 2 Curtis, 241, 243; *Commonwealth* v. *Duncan,* 91 Kentucky, 592; *State* v. *Davis,* 14 Nevada, 407, 413; *People* v. *Irving,* 95 N. Y. 541, 546; *Hunt* v. *State,* 6 Tex. App. 663; *Melton* v. *State,* 30 Tex. App. 273; *Jenkins* v. *State,* 30 Tex. App. 379.

Third. With reference to the matter of self-defence by reason of the presence of a real danger, the court charged that it could not be a past danger, or a danger of a future injury, but a present danger and a danger of "great injury to the

person injured that would maim him, or that would be permanent in its character, or that might produce death." In this we think nothing was stated incorrectly, and that there was a fair definition of what is necessary to constitute self-defence by reason of the existence of a real danger.

Neither, fourthly, do we find anything to condemn in the instructions in reference to self-defence based on an apparent danger. Several approved authorities are quoted from in which the doctrine is correctly stated that it is not sufficient that the defendant claims that he believed he was in danger, but that it is essential that there were reasonable grounds for such belief, and then the rule was summed up in this way:

"Now, these cases are along the same line, and they are without limit, going to show that, as far as this proposition of apparent danger is concerned, to rest upon a foundation upon which a conclusion that is reasonable can be erected there must be some overt act being done by the party which from its character, from its nature, would give a reasonable man, situated as was the defendant, the ground to believe — reasonable ground to believe — that there was danger to his life or of deadly violence to his person, and unless that condition existed then there is no ground upon which this proposition can stand; there is nothing to which the doctrine of apparent danger could apply."

Counsel criticise the use of the words "deadly violence," as though the court meant thereby to limit the defence to such cases as showed an intention on the part of the person assaulted to take the life of the defendant, but obviously that is not a fair construction of the language, not only because danger to life is expressly named, but also because in other parts of the charge it had indicated that what was meant by those words was simply great violence. This is obvious from this language, found a little preceding the quotation: "'When from the nature of the attack.' You look at the act being done, and you from that draw an inference as to whether there was reasonable ground to believe that there was a design upon the part of Owens in this case to destroy the life of the defendant Acers or to commit any great violence upon his person at the

time he was struck by the rock. 'When from the nature of the attack.' That implies not that he can act upon a state of case where there is a bare conception of fear, but that there must exist that which is either really or apparently an act of violence, and from that the inference may reasonably be drawn that there was deadly danger hanging over Acers, in this case, at that time."

These are all the matters complained of. We see no error in the rulings of the court, and, therefore, the judgment is

*Affirmed.*

Mr. Justice Shiras dissented.