STATE OF CONNECTICUT *v.* JUAN CORCHADO
(10657)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued October 14—decision released December 14, 1982

*Francis T. Mandanici,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Herbert J. Bundock,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Frank S. Maco,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J.   The defendant, Juan
Corchado, was tried by a jury and found guilty of
manslaughter in the first degree in violation of Gen-
eral Statutes § 53a-55 (a) (1). He was sentenced to
a term of not less than five years and not more than
ten years.   In this appeal, the defendant alleges
three claims of error:[1]   (1) that the court errone-
ously instructed the jury on the law of self-defense;
(2) that the court erred in denying his motion for
a judgment of acquittal in that the verdict was con-
trary to the law and the evidence; and (3) that the
court erred by not instructing the jurors that they
could infer that the defendant was innocent because
he summoned the police and surrendered to them.

From the evidence presented at trial the jury
could have found the following facts: The defend-
ant lived at 1196 State Street in Bridgeport, where
he was the superintendent of the building.   The
defendant's job required him to collect and to carry
rent money. For his protection he owned a gun for
which he had a permit. He had been separated from
his wife for five years. In the interim, he had lived
with another woman, Luz Bosco, for approximately
four to five years. He had two children by her whom
he raised along with a third child of Bosco's. At the
time of the incident, Bosco was living at 29 Russell
Street in Bridgeport.

The incidents leading directly to the victim's
death occurred on November 17, 1979. The defend-
ant had been in Hartford on that day.   He left

---

[1] In his brief, the defendant alleged a fourth claim of error based
upon the conduct of the prosecuting attorney in providing certain
authorities for his request to charge. At oral argument before this
court, counsel for the defendant abandoned this claim as being a
distinct issue. We have taken note, as he urges, of the arguments
raised by counsel to the extent that they are relevant to the validity
of the court's jury charge in general.

his gun at Bosco's house on Russell Street because two of his guns had previously been stolen from his State Street residence. Upon returning to Bosco's house at approximately 11 p.m., he noticed a car owned by Raphael Ventura parked outside. The defendant suspected that Ventura had been seeing Bosco and had talked to him about it on a few previous occasions. When he knocked on the door it took Bosco a few moments before she opened it. She seemed upset and nervous. After seeing Ventura's coat in the house, the defendant went outside. He saw Ventura, who had gone out the back door, trying to get into his car. The defendant approached Ventura and asked him whether he had been "fooling around" with Bosco. Ventura then pulled out a gun and pointed it at him. The defendant turned around and ran back into the house. Once inside, Bosco grabbed hold of him and told him not to go outside again. He pushed her away and started looking for his gun, which Bosco had hidden under her mattress. Shortly thereafter, he found his gun and his shoulder holster, which he put on underneath his coat. At this point, Bosco managed to calm him down. They sat down, had coffee and talked. Neither the defendant nor Bosco called the police.

Within a half hour after Ventura had first pointed a gun at the defendant, the defendant decided to go back to his house, but he told Bosco that he was first going to get some beer out of his car to leave for Bosco's brother. By that time he thought Ventura had left. When he went outside, however, he heard Ventura call him. Ventura was seated in his car which was parked in the middle of the road, about twenty to thirty feet from the front of Bosco's house, with its lights on and the motor running. The

defendant went over to the car and asked Ventura if he was fooling around with Bosco. Ventura did not answer but merely made a "mean smile." The defendant then slapped Ventura in the face with the back of his hand through the driver's side window which was open. Ventura then took out a gun with his right hand, pulled it across his chest and pointed it at the defendant.[2] At the same time, he began to get out of the car. Upon seeing Ventura's gun, the defendant, who testified that he knew he was going to be shot, immediately pulled out his gun and fired a shot at Ventura. At this point, Bosco, who had been observing the situation, went inside to try and contact the police. Ventura fell back after being shot and then started to get out of the car again. The defendant did not see whether Ventura still had his gun, although he testified that he felt he did, and proceeded to shoot him three or four more times.[3] Ventura managed to get out and to walk to the rear of the car where he fell.

The defendant then went inside Bosco's house where he emptied his gun and telephoned the police. When the police arrived, he gave himself up and stated that the shooting was in self-defense. He was taken to the police station where he gave two statements. Bosco also went to the police station to give a statement.

We turn to the defendant's claim that the court erred in its instructions to the jury on the law of self-defense and provocation. He argues that error was committed because the court gave certain

---

[2] A subsequent police investigation revealed that there was a .22 caliber handgun in the front seat of Ventura's car. The gun was inoperable when the police retrieved it from the car because the trigger and hammer were frozen in place.

[3] The pathologist who examined the victim testified that he had been struck by four bullets.

instructions pursuant to a request to charge sub-
mitted by the state[4] which was substantially differ-
ent from the Connecticut law on this matter. He
points to those instructions he claims are erroneous,
setting out that the court told the jury that "any
direct personal assault made in anger by the
accused, upon the deceased, of course, renders the
accused the aggressor, and when he kills the person
assailed, precludes him from pleading self defense";
that "a person is the aggressor when he leaves a
quarrel to go to his home to arm himself, and then
returns to the scene of the quarrel and kills the

---

[4] The request in question was as follows:

"The State requests the Court to instruct the jury as follows:

"1. As to Homicide in Self-Defense: Homicide is classified as
justifiable when the defendant is without fault and is attacked, and
reasonably believing that he is in danger of death or great bodily
harm, kills his attacker to defend himself. *Wharton's Criminal Law
and Procedure,* Vol. 1, Sec. 213, p. 464. *Allen* v. *United States,* 150
U.S. 551, 37 L. [E]d. 1179, 14 S. Ct. 196 [1893]. *Acers* v. *United
States,* 164 U.S. 388, 41 L. [E]d. 481, 17 S. Ct. 91 [1896].

"2. As to provocation by the defendant: While there is no fixed
rule applicable to every case with reference to what constitutes one
an aggressor so as to preclude his right to self-defense, it may be
stated generally that any act of the accused in violation of law and
reasonably calculated to produce the occasion amounts to bringing
on the difficulty and bars his right to assert self-defense as a justifi-
cation or excuse for a homicide. Any direct personal assault made
in anger by the accused upon the deceased of course renders the
accused the aggressor, and when he kills the person assailed, pre-
cludes him from pleading self-defense. *Wharton's Criminal Law
and Procedure,* Vol. 1 Sec. 229, p. 501, *People* v. *Hecker,* 109 Cal.
451 [42 P. 307 (1895)]. *State* v. *Rogers,* 18 Kan. 78 [1877]. It
is also held that a person is the aggressor when he leaves a
quarrel to go to his home to arm himself, and then returns to the
scene of the quarrel and kills the other person. *Wharton's Criminal
Law and Procedure,* Vol. 1 Sec. 229, p. 501. It has been held that
self-defense may not be claimed by one who deliberately places him-
self in a position where he has reason to believe his presence would
provoke trouble. *Rowe* v. *United States,* 370 F.2d 240 [(D.C. Cir.
1966)]."

We note that the defendant's brief does not directly address the
last sentence of the state's request.

other person";[5] and that homicide is justifiable when the defendant "is without fault and is attacked and reasonably believing that he is in danger of death or great bodily harm kills his attacker to defend himself." Additionally, the defendant claims that "even if the no fault law and other contentions requested by the Prosecution and given to the jury by the Court" had been the common law of this state, it is "axiomatic that the Connecticut statutes now take precedence over the common law."

The state, referring to the instructions objected to, together with instructions which immediately followed, states that "[t]he above portion[6] of the jury instructions while not in the exact language of the statute [General Statutes § 53a-19] certainly did convey its meaning and its application to this case to the jury." Moreover, it claims that the instructions "met the test of being correct in law and sufficient to guide the jury." It also claims that because there is "no discernible constitutional issue properly encompassed by this appeal," the

[5] Neither the state nor the defense requested an instruction on the need to retreat and the court did not instruct the jury on the subject of retreat.

[6] "Of course, you know that we're dealing with a homicide. Homicide is classified as justifiable when the defendant is without fault and is attacked and reasonably believing that he is in danger of death or great bodily harm kills his attacker to defend himself.

"While there is no fixed rule applicable to every case with reference to what constitutes one—an aggressor so as to preclude his right to self-defense, it may be stated generally that any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for homicide. Any direct personal assault made in anger, by the accused, upon the deceased, of course, renders the accused the aggressor, and when he kills the person assailed, precludes him from pleading self-defense.

"It is also a concept of our law, lady and gentlemen, that a person is the aggressor when he leaves a quarrel to go to his home to arm himself, and then returns to the scene of the quarrel and kills the

test to be applied to the court's instruction, which it agrees must be considered as a whole, is whether it is "reasonably probable" that the jury were misled by the attacked instructions. See *State* v. *Williams,* 182 Conn. 262, 268, 438 A.2d 80 (1980); *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147 (1974). Referring to *State* v. *Shaw,* 185 Conn. 372, 441 A.2d 561 (1981), the state also disagrees with the defendant's claim that the statutes on self-defense take precedence over the common law. It argues that where jury instructions are based on a statute, the statute "undiluted" is not all that is to be given the jury, but also common law or materials from texts.[7] We find error in the court's instructions on self-defense.

We begin our analysis by determining the proper standard of review to be applied to the court's

---

other person. It has been held that self-defense may not be claimed by one who deliberately places himself in a position where he has reason to believe his presence would provoke trouble.

"I have also been asked to charge you as follows: Lady and gentlemen, Mr. Corchado has presented evidence that he was justified or acting in self-defense when he shot Ventura. This is—become obvious to you, by now, this is the principal issue in this case.

"Our law holds that a person is justified in using reasonable physical force upon another to defend himself from what a person reasonably believes to be the use or imminent use of physical force by another.

"The law holds that a person, such as Juan Corchado, would have been justified in using such degree of force which he reasonably believes to be necessary to defend himself, except that he was not allowed to use deadly physical force unless he reasonably believed that Raphael Ventura was using or about to use deadly physical force or was inflicting or about to inflict great bodily harm."

This portion of the instructions includes the state's request, which is attacked and is followed, in the last three paragraphs of the quoted portion, by the substance of one of the defendant's requests to charge.

[7] It is a fair assumption that the "materials from texts" referred to here are those portions of *"Wharton's Criminal Law and Procedure"* cited in the state's request to charge.

instructions. "In appeals not involving a constitutional question the court must determine whether it is reasonably probable that the jury were misled; *State* v. *Ralls,* supra; *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *Penna* v. *Esposito,* 154 Conn. 212, 215, 224 A.2d 536 (1966); *Allard* v. *Hartford,* 151 Conn. 284, 292, 197 A.2d 69 (1964); and, in appeals involving a constitutional question, whether it is reasonably possible that the jury were misled. *State* v. *Annunziato,* 169 Conn. 517, 532, 363 A.2d 1011 (1975); see also *Gilbert* v. *California,* 388 U.S. 263, 268, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1966); *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967)." *State* v. *Williams,* 182 Conn. 262, 268, 438 A.2d 80 (1980).

We have said that "[a] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974). This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. See General Statutes § 53a-12 (a)." *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982).

"To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Piskorski,* 177 Conn. 677, 746, 419 A.2d 866 [cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed.

2d 194] (1979); *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 (1976); *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147 (1974)." *State* v. *Williams,* supra, 267–68. In considering the charge as a whole we eschew critical dissection; see, e.g., *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); thereby not passing upon the instructions attacked in "artificial isolation" from the whole charge. See *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977); *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 (1976). The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *Williams,* supra, 269; *State* v. *Harris,* supra, 226; *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 (1966).

In addressing the codification of the self-defense principle in General Statutes § 53a-19,[8] we have noted that "[t]he statutes which enumerate the situations where the use of force is justified 'attempt to restate the common law. They should be read

[8] General Statutes § 53a-19, entitled "Use of physical force in defense of person," provides: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if

in the light of their common law background, and the fact that an individual section does not fully state the relevant common law rule, with all its possible applications, exceptions or implications, should not prevent a court from reading it as incorporating the full body of common law rules relevant thereto.' " *State* v. *Shaw,* 185 Conn. 372, 379, 441 A.2d 561 (1981), quoting the Commission to Revise the Criminal Statutes, Connecticut Penal Code, comments 5–6 (1972). In referring to *Shaw,* the state argues that "the law of self-defense embraces not only the statutes but also the common law," and that "[i]f the statutes and/or the common law interpreted in conjunction with each other substantiate the jury instructions they would be in harmony with the law." While these arguments, as general statements, generate a superficial appeal, that appeal becomes specious insofar as it refers to *Shaw* as authority for "substantiating" the instructions attacked in this case. *Shaw,* which involved a completely different factual pattern from this case, drew on Connecticut common law for support; there is no real indication that the court

---

he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

did so here.[9]  Unlike *Shaw,* the instructions in this case are so different from the statute that they blunt to the point of reversible error those provisions of § 53a-19 critically significant on the law and to the evidence.

The self-defense statute, i.e., General Statutes § 53a-19, in subsection (a) provides in part, subject to the exceptions in subsections (b)[10] and (c): "a person is justified in using reasonable physical force upon another person to defend himself . . . *from what he reasonably believes* to be the use or imminent use of physical force, and he may use such degree of force *which he reasonably believes* to be necessary for such purpose . . . ." (Emphasis added.)  The statute focuses on the person, here the defendant Corchado, claiming self-defense.  It focuses on what *he* reasonably believes under the circumstances and presents a question of fact.  This subsection also makes clear that such a person may not use "deadly physical force"[11] unless he *reasonably* believes that the other person is either "using or about to use deadly physical force" or is "inflicting or about to inflict great bodily harm." This statutory emphasis upon the defendant further demonstrates the function of the jury in their evaluation of the self-defense claim.

---

[9] The instructions requested by the state cited no Connecticut case or statute.

[10] General Statutes § 53a-19 (b) is not critical to the issues in this case.  The court did not instruct the jury on the issue of retreat, which was the focus of *State* v. *Shaw,* 185 Conn. 372, 441 A.2d 561 (1981), and neither the state nor the defendant requested any charge on that matter.

[11] General Statutes § 53a-3 (5) defines "deadly physical force" to mean "physical force which can be reasonably expected to cause death or serious physical injury."  See *State* v. *Miller,* 186 Conn. 654, 661, 443 A.2d 906 (1982).

The same statute, in subsection (c), provides that "[n]otwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) *with intent* to cause physical injury or death to another person, he *provokes* the use of physical force by such other person, or (2) he is the *initial aggressor* . . . ." (Emphasis added.) General Statutes § 53a-19 (c). This defendant, therefore, cannot avail himself of the justification provisions of subsection (a) where, under (c), he is proven to have acted with the requisite intent to provoke under (c) (1) or he is proven to be the initial aggressor under (c) (2).[12] Whether the defendant did, in fact, act with such intent and whether he was the initial aggressor are critical circumstances in the jury's evaluation of his claim of self-defense.

The court told the jury, quoting from the state's request, that "[h]omicide is classified as justifiable when the defendant is without fault and is attacked and reasonably believing that he is in danger of death or great bodily harm kills his attacker to defend himself."[13] We believe that the words "with-

---

[12] General Statutes § 53a-19 (c) (2) bars the justification benefits of § 53a-19 (a) to one who uses physical force who is the "initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ." This exception is not applicable in this appeal and neither party has claimed that it is. Section 53a-19 (c) (3) does not apply to this appeal.

[13] The state's request to charge set out above offered as authority for this statement: *"Wharton's Criminal Law and Procedure*, Vol. 1, Sec. 213, p. 464; *Allen* v. *United States,* 150 U.S. 551, 37 L. Ed. 1179, 14 S. Ct. 196 [1893]; *Acers* v. *United States,* 164 U.S. 388, 41 L. Ed. 481, 17 S. Ct. 91 [1896]."

A reading of *Allen,* which was a murder case, discloses that one of the issues on appeal was the trial court's instruction on self-

out fault," coming as they did at the start of the challenged instructions in combination with the other challenged instructions, as they impacted the jury, even in the context of the whole charge, erroneously deprived the defendant of the fair intendment of § 53a-19. The term "without fault" was neither explained nor defined. The statute does not provide that a person be "without fault" to come within its reach. It is not difficult to visualize self-defense situations where, as here, there is some fault on both sides.

Much is made of the slap given the victim by the defendant just before the fatal shooting, after the former had made a "mean smile." The slap, of course, is to be viewed not only as a response to the "mean smile" but also in light of the earlier altercation in which the victim had pointed a gun at the then unarmed defendant after the defendant had accused him of "fooling around" with Bosco. Thus, to a layman on a jury, there was some "fault" on both sides. Yet "without fault," open ended as it was in context, propounded an absolute for the jury while the statute does not. Its use served, at the very least, to dilute the right of the jury to assess the defendant's conduct, including his intent, from

defense which did refer to the right to self-defense of a man "doing no wrong." It did not dispose of the case on that ground. It elected to do so on the basis of certain other observations made by the trial court in its instructions on self-defense and made clear that it was so doing. *Allen* v. *United States*, supra, 560. *Allen*, we submit, cannot fairly be read as authority for the proposition suggested in the state's request.

*Acers* involved the appeal of a conviction of assault with intent to kill and the only questions presented to the United States Supreme Court arose out of the trial court's instructions to the jury. *Acers* v. *United States*, supra, 389–90. Certain of those instructions were on the matter of self-defense. We do not read *Acers* as authority for the "without fault" portion of the state's request. See *Acers* v. *United States*, supra, 391–92.

what reasonably appeared to him under the circumstances. Instructions should be reviewed, inter alia, in terms of their effect upon the jurors who heard them; see *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 360, 294 A.2d 305 (1972); and so are to be read "to convey normal meanings to juries in the context of the case in which they are given"; *City of Aurora* v. *Woolman,* 165 Colo. 377, 382, 439 P.2d 364 (1968); and "as the jury might reasonably understand . . . [them]." *Lazzari* v. *State Marine Corporation of Delaware,* 230 Or. 372, 377, 369 P.2d 693 (1962); see *Sandstrom* v. *Montana,* 442 U.S. 510, 517–19, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *Frankovitch* v. *Burton,* 185 Conn. 14, 23, 440 A.2d 254 (1981); 89 C.J.S., Trials § 427. The plain meaning of "without fault" interposed a bar to consideration by the trier of fact whether, on balance, the defendant was without that degree of fault which precluded his invocation of § 53a-19. See *Gaulton* v. *Reno Paint & Wallpaper Co.,* 177 Conn. 121, 127, 412 A.2d 311 (1979); *Slepski* v. *Williams Ford, Inc.,* 170 Conn. 18, 23, 364 A.2d 175 (1975).

We take up now the balance of the instructions attacked. The court charged the jury that "[a]ny direct personal assault made in anger, by the accused, upon the deceased, of course, renders the accused the aggressor, and when he kills the person assailed, precludes him from pleading self-defense."[14] In addition, the court told the jury that "[i]t has been held that self-defense may not be

[14] The sentence immediately preceding this verbatim quotation from 1 Wharton, Criminal Law and Procedure § 229, p. 501, which was not in the state's request, states: "It is generally held that the aggressor is the one who first does acts of such nature as would ordinarily lead to a deadly combat or as would put the other person involved in fear of death or serious bodily injury."

claimed by one who deliberately places himself in a position where he has reason to believe his presence would provoke trouble." Moreover, it also instructed the jury that "[i]t is also a concept of our law, lady and gentlemen, that a person is the aggressor when he leaves a quarrel to go to his home to arm himself, and then returns to the scene of the quarrel and kills the other person."[15]

Initially, we note that singly, and certainly collectively, these instructions, fairly construed, foreclosed the defendant from his right to have the jury pass upon his claim of self-defense under § 53a-19. This is principally, if not entirely so, because the instructions, in effect, made him the initial aggressor not only because of the slapping incident[16] but also because he returned to the scene after arming himself.

The state argues in its brief that the defendant's argument concerning the slap "is not relevant to this case since it did not provoke Ventura to use physical force. And even if the slap did provoke Ventura to the use of physical force the subsequent shooting was not justified since Corchado was the

[15] The sentence immediately following this verbatim quotation from 1 Wharton, Criminal Law and Procedure § 229, pp. 501–502, which was not in the state's request states: "The fact that a person has invited the discussion of a subject as to which animus existed between the parties, or that he has demanded an explanation of offensive words or conduct or the settlement of a claim, or that a person has insulted another, *or even that he was the first to strike a blow, does not by itself make him the aggressor."* (Emphasis added.)

[16] During deliberations the jury sent the following question to the court: "The jury requests the reading back of the testimony where [the defendant] Juan Corchado admits to striking Mr. Ventura with the back of his hand. We would like the questions previous to this incident and the response made."

The court had this testimony reread. About ten minutes after this rereading the jury returned with their verdict of guilty.

initial aggressor." We disagree for several reasons. First, it was relevant because it clearly had a bearing on the existence of facts the jury were ultimately required to determine, i.e., on the issue of self-defense. *State* v. *Belanger,* 148 Conn. 57, 59, 167 A.2d 245 (1961); see *Delmore* v. *Polinsky,* 132 Conn. 28, 31, 42 A.2d 349 (1945). Second, it was relevant to the claim that the slap did not provoke Ventura to the use of physical force; immediately thereafter Ventura did point his gun at the defendant. From the viewpoint of the defendant under § 53a-19 (a) "from what he [the defendant] reasonably believes to be the use or imminent use of . . . force . . ." a question of fact for the trier arises on the issue of provocation including the issue of the defendant's intent under § 53a-19 (c).

These instructions, therefore, include some "directed verdict" language, i.e., "a person is the aggressor when he leaves a quarrel to go to his home to arm himself, and then returns to the scene of the quarrel and kills the other person," which serves to preclude the jury not only from determining Corchado's "intent" under § 53a-19 (c), but also from determining what he "reasonably believes" under § 53a-19 (a) including the propriety of the quantum of force he employed—all of which went to the issue of justification of his conduct. The instructions did not inform the jury that they might distinguish between force which is deadly yet reasonable and force which, although not deadly, is unreasonable. The instructions also prevented the jurors from knowing that it was for them to decide whether the defendant, by slapping the victim or returning to the scene after arming himself, intended to cause physical injury or death as well as whether he reasonably believed his action would

provoke the grave response of being threatened with a gun (which he had no reason to know was inoperable).

While certain instructions and the applicable principles of law on self-defense were correctly stated, intermixed with these were material instructions, to which we have alluded, which were clearly erroneous. *Natale* v. *White*, 158 Conn. 618, 619, 262 A.2d 184 (1969); *Gaul* v. *Noiva*, 155 Conn. 218, 220, 230 A.2d 591 (1967); see *State* v. *Tinsley*, 181 Conn. 388, 404–405, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State* v. *Loughlin*, 149 Conn. 21, 26, 175 A.2d 367 (1961). Such error cannot be said to be harmless; see *State* v. *Loughlin*, supra; and it is, therefore, reasonably possible that the jury was misled. *State* v. *Williams*, 182 Conn. 262, 268, 438 A.2d 80 (1980); *State* v. *Rose*, 169 Conn. 683, 688, 363 A.2d 1077 (1975); *State* v. *Ralls*, 167 Conn. 408, 422, 356 A.2d 147 (1974). A new trial is required.[17]

---

[17] The defendant claims that because the evidence could not reasonably support a finding of guilty, this court should render a judgment of not guilty in his favor. This claim merits only brief discussion. The defendant, referring to *State* v. *Giguere*, 184 Conn. 400, 402–403, 439 A.2d 1040 (1981), argues that the evidence was not sufficient to justify a verdict of guilty because the accused acted in self-defense in accord with General Statutes § 53a-19. He claims that even if the court instructed the jury pursuant to the statute rather than on the stricter standards of Wharton, then the verdict "would have been not guilty in accord with said statute." We disagree.

In *Giguere* we said: "In determining whether the evidence is sufficient to sustain a verdict, 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.'" (Citations omitted.) *State* v. *Giguere*, supra.

It is apparent from the evidence we set out that had the court instructed the jury correctly on self-defense the jury could reasonably have found the defendant guilty.

Finally, the defendant claims error in the court's failure to charge as requested on an inference of innocence. The defendant filed a request to charge which first pointed out that the flight of one accused of crime is one circumstance, which considered with all the facts, may justify an inference of guilt. It then went on to request the following charge: "Therefore, if you find that Juan Corchado, after shooting Raphael Ventura, immediately called the police, waited for them and surrendered to them then you may infer, when considering these facts with all the other facts of the case, that Juan Corchado is innocent." The court did not grant the request and an exception was taken.

The defendant argues that "[i]f the law allows an instruction that flight may imply guilt then it is only fair that the law provide an instruction that surrender implies innocence and that a Defendant who surrenders is telling the truth." The failure to give this instruction, the defendant continues, violates his due process right to a fair trial and to equal protection of the laws under both the United States and the Connecticut constitutions. The defendant cited no authority at all in his request. See Practice Book § 852. Moreover, neither in his request to charge nor in his exception in the trial court after the charge did the defendant give any indication of the constitutional claims he now makes for the first time on appeal. " 'The general rule against considering claims not raised at trial, Practice Book § 3063, applies also to constitutional issues. *Mechanics Savings Bank* v. *Tucker,* 178 Conn. 640, 425 A.2d 124 (1979) ; *New Haven Savings Bank* v. *Valley Investors,* 174 Conn. 77, 84, 384 A.2d 321 (1977).' " *Roche* v. *Fairfield,* 186 Conn. 490, 505, 442 A.2d 911 (1982), quoting *Burritt Mutual Sav-*

*ings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 377, 439 A.2d 396 (1981). Under the circumstances set out above, we do not address this issue.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.