MECHANICS SAVINGS BANK *v.* STANLEY V.
TUCKER ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and D. SHEA, Js.

Argued June 13—decision released August 14, 1979

*Stanley V. Tucker,* pro se, the appellant (named defendant).

*Thomas F. Parker,* for the appellee (plaintiff).

PETERS, J. The defendant is appealing from a judgment of strict foreclosure rendered against him on default when he failed, after due notice, to appear at a scheduled hearing for trial of his case. The plaintiff, Mechanics Savings Bank, initiated an action for foreclosure of its mortgage lien on property owned by the defendant, Stanley V. Tucker.[1] The defendant filed an answer, special defenses, and counterclaims. The trial court, after entry of default upon the defendant's nonappearance for trial, heard the plaintiff, decreed a judgment of strict foreclosure, set a law date, and awarded the plaintiff attorney's fees. Thereafter the defendant filed a number of motions, all of which were denied after hearing: to set aside the default judgment, to substitute foreclosure by sale for the order of strict foreclosure, to open the judgment, to extend the law dates and to stay state proceedings pending disposition of matters before the federal bankruptcy court. This appeal challenges the procedural propriety of the default judgment against the defendant, as well as the substantive sufficiency of the plaintiff's evidence before the trial court.

The facts surrounding the entry of judgment by default are challenged by the defendant but are amply supported by the evidence before the trial court. After the trial of this action for mortgage foreclosure had been on the court's trial assignment list for many weeks, it was assigned for trial before the trial court, *Aspell, J.,* on June 13, 1978. Notice of this assignment for trial was issued to both parties on June 6, 1978. The defendant, who is repre-

---

[1] A number of other defendants who had or might have had claims to the mortgaged property were defaulted early in the proceedings, either for failure to appear or for failure to plead. None of them is a party to this appeal.

senting himself, received this notice, and responded thereto by writing Judge Aspell that he could not appear because he had to make an appearance before the Appellate Session of the Superior Court at the same time. Although the defendant's business before the Appellate Session was in fact concluded by 10:32 a.m. on June 13, 1978, the defendant did not thereafter contact Judge Aspell, nor did he appear at the call of the cases on the following day. On that day, June 14, 1978, Judge Aspell issued a notice to the defendant directing and ordering his appearance for trial at 10 a.m. on June 15, 1978. The notice stated specifically that trial would commence on June 15 as soon as the court could hear the case, whether or not the defendant was present. This notice was personally served upon the defendant at approximately 8 p.m. on June 14. The defendant replied thereto by again writing Judge Aspell, this time to advise her that he could not appear on June 15 because of a hearing ordered by the Chief Judge of the United States District Court on that date. While the defendant did confer with United States District Court Judge Clarie on June 15, that conference was not pursuant to any formally scheduled hearing, nor had the defendant in fact been ordered to appear. Possibly a pro se litigant like the defendant might have misunderstood the legal distinction between a conference and a hearing. In any case, Judge Aspell did not undertake to hear this matter until the afternoon of June 15, after the defendant had again been personally informed that Judge Aspell was awaiting his presence to begin trial, and after the proceedings in the federal court, which took no more than thirty minutes, had been concluded. The defendant never appeared before the trial court at any time on June

15. Trial was commenced in his absence at 2 p.m. that day, upon entry of default for nonappearance for trial.

These facts incontestably establish that the trial court was justified in its conclusion that a default judgment was appropriate because the defendant's nonappearance for trial, after due and ample notice, was wilful, deliberate, and inexcusable. Although it is our established policy to allow great latitude to a litigant who, either by choice or by necessity, represents himself in legal proceedings; *Hartford National Bank & Trust Co.* v. *Tucker,* 178 Conn. 472, 423 A.2d 141 (1979); *Bitonti* v. *Tucker,* 162 Conn. 626, 627, 295 A.2d 545, cert. denied, 409 U.S. 851, 93 S. Ct. 62, 34 L. Ed. 2d 94 (1972) (both involving this same defendant); even such a litigant must conduct himself in accordance with reasonable court orders. A court must have the authority to manage its calendar, and a defendant's alleged willingness to appear on earlier dates does not give him a constitutional privilege to avoid a date subsequently set by the court for the trial of his case. *New England Floor Covering Co.* v. *Architectural Interiors, Inc.,* 159 Conn. 352, 356, 269 A.2d 267 (1970); *Automotive Twins, Inc.* v. *Klein,* 138 Conn. 28, 33, 82 A.2d 146 (1951).

The only justification that the defendant now offers for his failure to appear on the afternoon of June 15, 1978, is the court's noncompliance with the procedure spelled out by Practice Book, 1963, § 156[2]

---

[2] "[Practice Book, 1963] Sec. 156. MOTION TO POSTPONE; ABSENT WITNESS. Whenever a motion is made for the postponement or continuance of a cause on account of the absence of a material witness, such motion, if the adverse party requires it, shall be supported by an affidavit stating the name of the absent witness, if known, and the particular facts which, it is believed, may be proved by him,

(now Practice Book, 1978, § 280) for the postponement of a trial on account of the absence of a material witness. In his letter advising Judge Aspell that he was required to be in federal court on June 15, the defendant also stated, "A number of witnesses must be subpoenaed and if the amendments are permitted more witnesses are needed so orderly preparations are required." Such a letter cannot, even if served upon the other party, suffice as a motion to postpone, since it fails to provide the other party with the opportunity to inquire into the identity of the missing witness or witnesses or into the facts that such witness or witnesses are expected to prove. The trial court was therefore correct in concluding that the defendant had not complied with the requirements of Practice Book, 1963, § 156 for a postponement of trial. There was no error either in the original entry of the order of default, nor in the refusal, after an evidentiary hearing upon the defendant's motions, to set that order aside.

The defendant further maintains that, regardless of the propriety of the entry of judgment on default, he may still contest the sufficiency of the plaintiff's evidence in support of the judgment of foreclosure. Although we agree with the defendant that default does not obviate the necessity for the plaintiff to establish his case; Practice Book, 1978, § 366; *United National Indemnity Co.* v. *Zullo,* 143

with the grounds of such belief. The court may refuse to continue such cause if the adverse party will admit that the absent witness would, if present, testify to the facts stated in the affidavit, and will agree that the same shall be received as evidence on the trial, in like manner as if the witness were present and had testified thereto. Such agreement shall be made in writing at the foot of the affidavit and signed by the party or his attorney. The same rule shall apply where the motion is grounded on the want of any material document or other evidence that might be used on the trial."

Conn. 124, 129–30, 120 A.2d 73 (1956); *Starr Cash & Package Car Co.* v. *Starr,* 69 Conn. 440, 446, 37 A. 1057 (1897); we do not agree with him that the plaintiff did not satisfy its burden of proof. The defendant claims error with regard to three issues, each of which we will examine separately: the sufficiency of the evidence with regard to the defendant's default and the plaintiff's consequent exercise of its acceleration rights; the legality of the process of strict foreclosure; and the justification of the assessment of attorney's fees.

On the issue of default, the trial court found that the defendant had executed a note, and a mortgage to secure the note, to the plaintiff on May 16, 1969. Under the terms of the note and mortgage, the defendant was obligated to make monthly payments of principal and interest; failure to make payments when due or within thirty days thereafter was an event of default, and entitled the plaintiff mortgagee to accelerate the whole debt. The evidence before the trial court, in the absence of countervailing evidence by the defendant, amply established the fact of several months' default in payments. In fact, the only challenge even now to the finding of default relates to the question of which months' payments were not made, rather than to the underlying reality of nonpayment.[3] The defendant's argument that insurance moneys generated by a fire loss should have been an offset to the overdue mortgage payments cannot survive the court's unchallenged finding that the defendant had refused to endorse the check from the insurance company to the plaintiff, and thus had not made these proceeds available to the plaintiff.

[3] The court also made an unchallenged finding that the defendant was in default for failure to pay taxes due the city of Hartford.

The defendant further argues that acceleration of the mortgage debt as a whole, even after default in particular payments, violates the provisions of § 1-208 of the Uniform Commercial Code, General Statutes § 42a-1-208. The defendant's reliance on this section is misplaced. Whether or not the Uniform Commercial Code should, by analogy, be extended to transactions involving real as well as chattel property, § 42a-1-208 by its terms governs only acceleration clauses triggered by the mortgagee " 'at will' or 'when he deems himself insecure.' " Section 42a-1-208 imposes no restraints on acceleration because of nonpayment of installments of the mortgage indebtedness. This mortgage contained no insecurity clause and this mortgagee did not purport to accelerate this mortgage "at will." The court was therefore entirely justified in its conclusion that the defendant's total indebtedness to the plaintiff as of the date of trial included principal, interest, late charges, and advances for insurance, and amounted to the sum of $51,914.53.

The defendant's second major substantive claim challenges the propriety of the entry of the judgment of strict foreclosure. The defendant questions the constitutionality of the process of strict foreclosure, the denial of his motion to substitute foreclosure by sale, and the method of appraisal offered in justification of this particular order of foreclosure. A short answer to these contentions is that, since none of them was raised before the trial court, because of the defendant's absence at the time of the trial, none of them is properly before this court. We cannot consider the constitutionality of a statute on the basis of a record as inadequate as this one; nor can the belated motion for a foreclosure by sale be tested on review in the absence

of a proper finding. As to the method of appraisal proffered to and accepted by the trial court, we cannot say that the evidence was insufficient to justify the court's conclusion that the value of the property, at the time of trial, was only $32,000.

The defendant's final claim of error relates to the calculation of attorney's fees that were included in the mortgage debt. The plaintiff incurred fees, not only for the instant foreclosure action, but also in defending against an antitrust action brought by the defendant and in participating in three bankruptcy proceedings under Chapter XII of the Bankruptcy Act; Bankruptcy Act §§ 401–526, 11 U.S.C. §§ 801–926; also brought by the defendant. General Statutes § 49-7 authorizes agreements contained in notes and mortgages to provide for the payment of attorney's fees incurred not only in collection of the debt or foreclosure of the mortgage, but also "in protecting or sustaining the lien of such mortgage." The note and mortgage signed by the defendant obligated him, as § 49-7 authorizes, to "3. Pay all costs, charges and expenses, including reasonable attorney's fees incurred by the grantee in any foreclosure or other legal proceeding for collection of the debt hereby secured, and in protecting this mortgage as a first lien on said premises for sustaining the lien thereof, and in any other litigation or controversy arising from or connected with this mortgage for the debt hereby secured." The plaintiff produced documentary evidence of the fees it had incurred, and testimonial evidence of their reasonableness. The trial court found that the amount of $16,045.82 in fees and expenses was a reasonable and necessary outlay to collect the debt and to protect the lien of the mortgage.

The defendant challenges both the reasonableness of the amount of the attorney's fees and the propriety of including amounts attributable to the antitrust and to the bankruptcy proceedings. As to the first, the plaintiff's uncontradicted evidence was a sufficient basis for the court's finding of fact. As to the second, we cannot say, on this record, that the court's interpretation of the language of the attorney's fees clause of this note and mortgage was unwarranted. The defendant has in no way rebutted the plaintiff's assertion that the antitrust suit sought to negate the defendant's obligations under the note and mortgage. Defense of such a suit could therefore constitute protection of the lien of the mortgage, within the clause and General Statutes § 49-7. Although Chapter XII proceedings under the federal Bankruptcy Act do not impinge directly on valid security interests, we are not prepared to say that such proceedings are necessarily so remote from the interests of a mortgagee that a person in the position of the defendant, after default, can without any evidentiary showing whatsoever avoid responsibility for fees and costs actually incurred. Finally, the defendant maintains that the trial court lacked jurisdiction to award fees for expenses attributable to bankruptcy proceedings, because such fees can be awarded only by the bankruptcy court, and not by a state court. The exclusive jurisdiction of the federal bankruptcy court is limited to the estates that are being administered under the aegis of the Bankruptcy Act and does not extend to private actions of foreclosure against debtors outside of that act. Bankruptcy Act § 23, 11 U.S.C. § 46. The trial court had the jurisdiction to make an award of

attorney's fees, and we find no error in its findings and conclusion in that regard.

There is no error.

In this opinion the other judges concurred.