[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 13, 1995
This is an action for foreclosure. Based on the testimony and evidence presented at trial, the court finds that the plaintiff, Shadhali, Inc., a Connecticut corporation, is an assignee of a promissory note executed by the defendants, Sirvart K. Hintlian, et al. The note was secured by a mortgage on real estate located at 1730 Berlin Turnpike, Wethersfield, Connecticut. As of the date of the assignment the principal balance due on the note was $435,620.68. As of the date of the assignment, the defendants, total obligation, including interest, was $446,570.26. Since the date of the assignment the defendants have made no payments and have also failed to pay the Town of Wethersfield real estate taxes. The plaintiff presented CT Page 889 evidence as to the amount of taxes, interest, attorneys, fees and late charges that have accrued.
The defendants argue that the plaintiff "introduced insufficient credible evidence that the plaintiff ever demanded or accelerated the note." However, such formal procedures are expressly waived in the note, which was signed by the defendants. According to the terms of the note, the defendants waived their right to notice. "An endorser is bound by the waiver which he endorses." First New Haven National Bank v. Clarke,33 Conn. Sup. 179, 182, 368 A.2d 613 (1976) (Jacobs, J.). See also, General Statutes § 42a-3-504 and § 42a-3-511).
"The general rule is that where a mortgage contains an acceleration clause relating to defaults in the payment of interest or an instalment of principal, the mortgagee is entitled in case of such a default to enforce the acceleration clause at once, according to its terms." 55 Am.Jur.2d § 350 (1971). (Emphasis added.) In the present case, the operative language, as respects this issue, in the note is as follows:
 Default in the payment of any of said monthly installments of principal and interest when due, or of taxes or municipal assessment on the premises mortgaged to secure this note, or of fire or other insurance premiums or of taxes on this Note, for a period of thirty (30) days after any of the same shall become due and payable, or failure to keep and punctually perform any of the agreements or provisions contained in the mortgage or other security instruments securing this Note, or the filing of a petition in bankruptcy by or against the Maker, or the vesting of title to or the transfer of any interest in the premises mortgaged to secure this Note in or to anyone other than the Maker hereof, or the placing of additional financing on the property mortgaged to secure this Note or otherwise further encumbering such property or of leasing the mortgaged premises or any part thereof, without the express prior written consent of the holder hereof, or in the event of any default by the Maker in connection with any other agreements, obligations and/or financings with the holder hereof whether CT Page 890 now existing or hereinafter arising, shall render the whole of this Note with interest immediately due and payable without notice at the option of the holder hereof. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent or continuing default. (Emphasis added.)
In addition, the note (Plaintiff's Exhibit 2) contains the following language: "THE MAKER HEREBY WAIVES PRESENTMENT FOR PAYMENT, NOTICE OF DISHONOR, PROTEST AND PAYMENT HEREOF . . ."
"Under the terms of the note and mortgage, the defendant was obligated to make monthly payments of principal and interest; failure to make payments when due or within thirty days thereafter was an event of default, and entitled the plaintiff mortgagee to accelerate the whole debt." See Mechanics Savings Bankv. Tucker, 178 Conn. 640, 645, 425 A.2d 124 (1979).
Our Connecticut court, some considerable time ago, addressed this issue and said, "On the face of the contract there is no reason for requiring such a demand, because the contract puts the burden of making payment on the defendants, and if the plaintiff had stood on his contract the defendant could not have been in default [for thirty days without knowing it]."Console v. Torchinsky, 97 Conn. 353, 355, 116 A. 613
(1922). "It may therefore be said that the provision for accelerating the maturity of the note without demand or notice, was agreed upon in contemplation of the fact that the debtor could not, under the terms of the contract, be in default without knowing it, and without having ample time to repair the default before any right to accelerate the maturity of the note could arise." Id.
The language in the instant note does not appear to be at all identical to the language examined by the court in a case presented by the defendants, FirstFederal Savings and Loan Association of Gary v. Stone,467 N.E.2d 1226 (Ind.App. 1984). In First Federal the only indication of what the language used is that "[t]he mortgage contained a non-waiver clause which provided that a waiver of the option to accelerate the note CT Page 891 upon default at one time `shall not constitute a waiver of the right to exercise the [option] at any other time.'"
In another case cited by the defendants, Ogden v.Gibraltar Savings Association, 640 S.W.2d 232, 233
(Tex. 1982), the court said,
 Thus, in the absence of a waiver, the holder of a delinquent installment note must present the note and demand payment of the past due installments prior to exercising his right to accelerate.
(Emphasis added.)
The two remaining cases cited by the defendants,Successors to the Interest of Rea Glass, Inc. v. AlliesCorporation, 704 S.W.2d 387 (Tex.App. 1985), andJasper Federal Savings Loan Association v. Reddell,730 S.W.2d 672 (Tex. 1987), do not appear to contain language similar to the language in the note in the present case.
In the present case, the language of the note clearly states the principle that failure to make payments when due constitutes an event of default. See MechanicsSavings Bank v. Tucker, supra, 178 Conn. 640. The cases cited by the defendants are clearly distinguishable.
The defendants also moved to strike the testimony of the appraiser because the defendant argued and claimed the appraisal failed to satisfy § 20-328-29 of the Department of Consumer Protection Regulations.[1]
The appraisal had already been marked a full exhibit. This court did take judicial notice of the Regulations. See Roden v. Connecticut Co., 113 Conn. 408, 415,416, and see Gitillo v. Howe, 4 Cir. Ct. 649, 653.
The defendants did not specifically indicate how the appraisal fails to satisfy § 20-328-29 nor did they examine into the question as to the effect of the regulation. Cross examination, in the main, centered about "Highest and Best Use." Sub-section (d) of the regulation says that "[w]hen an appraisal is undertaken which departs from accepted appraisal criteria, the reasons for such departure and the CT Page 892 manner in which it differs from such criteria shall be included in the appraisal." The appraiser explained, in his report and testimony the reason, he believed, the simple assignment of "highest and best use" of the premises, in this particular case, was inappropriate. According to § 20-328-29(d), strict compliance is excused if explained. This court finds the appraisal is one being in full compliance with the regulation. The defendants' motion to strike the appraiser's testimony made during trial, if that motion is still being pressed, is denied.
The defendants also argue that the plaintiff should not receive monthly late charges accruing after the acceleration of the note. However, pursuant to the terms of the note, the plaintiff is entitled to late charges, and, indeed, late charges are routinely awarded. See, e.g., Mechanics Savings Bank v. Tucker,supra, 178 Conn. 646.
The case of Bank of Boston Connecticut v. Crane, 9 CONN. L. RPTR. 208 (1993) (Fuller, J.), is distinguishable. In Bank of Boston the plaintiff was unable to justify the large amount of requested late charges ($532,311.73) as commercially reasonable, and the court exercised its discretion and used its equitable power to disallow a major portion of the late charges.Id., 209. In the present case, the amount is clearly within a reasonable range. The plaintiff is entitled to the requested late charges.
At the outset, the parties agreed that the complaint dated June 28, 1993 and the Answer, Special Defenses and Counterclaims dated October 13, 1993 were the pleadings upon which the trial was to be conducted.
All issues are found for the plaintiff and against the defendant.
Accordingly, a judgment of strict foreclosure is entered. This court finds that the Fair Market Value of the subject property is $415,000.00. CT Page 893
 Debt: (446,570.26, plus 65,610.05 (interest), plus 3,831.68 (late charges), plus 43,329.60 (taxes) 559,341.59 Counsel Fees: (allowed and approved) 11,849.20 Appraisal Fee and Testimony of Appraiser: (allowed and approved) 2,400.00 Title Fee: (allowed and approved) 150.00 TOTAL: (debt found due and allowed and ----------- approved amounts) $573,740.79
Law day is set for Monday, February 27, 1995, for the owner of the equity of redemption, and subsequent days for subsequent encumbrances in the inverse order of their priorities.