******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TOWN OF LEDYARD *v.* WMS GAMING, INC.
## (AC 39746)

DiPentima, C. J., and Keller and Noble, Js.

*Syllabus*

The plaintiff town brought this action against the defendant, W Co., seeking to collect unpaid personal property taxes it had imposed on slot machines that W Co. owned and leased for use at a casino. Thereafter, the Indian tribe that owned the casino filed an action in federal court against the town, among others, challenging the town's authority to impose personal property taxes on the slot machines. After a federal appeals court determined that the town did have authority to impose taxes, the town and W Co. entered into a stipulation regarding the unpaid taxes, interest, penalties, and attorney's fees in the present action. The town and W Co., however, disputed whether the trial court in the present action could also find W Co. liable for the attorney's fees the town incurred in defending the federal action in which W Co. was not a party, and, therefore, they filed cross motions for summary judgment as to liability only on that issue. The trial court granted the town's motion for summary judgment, concluding that the town was entitled to the attorney's fees it had incurred in defending the federal action pursuant to the statute (§ 12-161a) that requires a property owner to pay the attorney's fees of a municipality in an action brought to collect delinquent personal property taxes when the fees are "as a result of and directly related to" the collection proceeding. W Co. appealed to this court, which granted the town's motion to dismiss the appeal for lack of subject matter jurisdiction and dismissed the appeal. Thereafter, W Co., on the granting of certification, appealed to our Supreme Court, which reversed the judgment of this court and remanded the case to this court with direction to deny the town's motion to dismiss and for further proceedings. On remand, *held* that the trial court improperly granted the town's motion for summary judgment because it improperly applied an expansive interpretation of § 12-161a to characterize the attorney's fees incurred in the federal action as falling within the ambit of fees directly related to the collection proceeding presently before this court: the attorney's fees attributable to the federal action were not directly related to the collection proceeding, as the federal action was a collateral action the resolution of which, although significant to the ultimate resolution of the tax collection issue in the present action, did not result directly in a final determination of the rights and obligations of the parties relative to the claimed delinquent tax, and, therefore, given the restrictive language of § 12-161a, only litigation fees incurred in the prosecution of the collection action itself would qualify as attorney's fees directly related to the collection proceeding; moreover, this court's conclusion that the attorney's fees attributable to the federal action were not directly related to the collection proceeding was supported by the claims that were at issue in the federal action, which were related solely to the Indian tribe's defense against the town's alleged encroachment upon aspects of tribal sovereignty protected under federal law, by consideration of the relationship of § 12-161a to other statutes, which indicated that the legislature's use of the adverb directly establishes a greater limitation on the nexus between the attorney's fees sought and the proceeding in which they are requested than that urged by the town in the present case, and by certain relevant authority from our Supreme Court; accordingly, the trial court's judgment was reversed and the case was remanded with direction to deny the town's motion for summary judgment and to grant W Co.'s motion for summary judgment.

Argued May 21—officially released September 17, 2019

*Procedural History*

Action to recover unpaid personal property taxes, and for other relief, brought to the Superior Court in the judicial district of New London, where the parties

entered into a stipulated agreement; thereafter, the court, *Vacchelli, J.*, granted the plaintiff's motion for summary judgment as to liability and denied the defendant's motion for summary judgment as to liability, and the defendant appealed to this court, which granted the plaintiff's motion to dismiss the appeal, from which the defendant, on the granting of certification, appealed to the Supreme Court, which reversed this court's judgment and remanded the case to this court with direction to deny the plaintiff's motion to dismiss and for further proceedings. *Reversed*; *judgment directed.*

*Aaron S. Bayer*, with whom was *David R. Roth*, for the appellant (defendant).

*Lloyd L. Langhammer*, for the appellee (plaintiff).

*Opinion*

NOBLE, J. In this action to collect unpaid personal property taxes, the defendant, WMS Gaming, Inc., appeals from the summary judgment as to liability only rendered by the trial court in favor of the plaintiff, the town of Ledyard, awarding it attorney's fees pursuant to General Statutes § 12-161a.[1] The defendant's sole claim on appeal is that the trial court improperly concluded that the defendant was liable for attorney's fees incurred by the plaintiff while litigating a collateral action in federal court in addition to the fees incurred while pursuing this action. Specifically, it argues that the court improperly determined that the fees incurred in the collateral action were "as a result of and directly related to" this collection action within the meaning of § 12-161a. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On August 3, 2006, two years prior to commencing the present action, the Mashantucket Pequot Tribal Nation (Tribal Nation) filed an action in the United States District Court for the District of Connecticut challenging the authority of the state of Connecticut and the plaintiff to impose property taxes on slot machines owned by Atlantic City Coin & Slot Co. (AC Coin) and leased to the Tribal Nation, for use in its gaming operations. In that complaint, the Tribal Nation alleged that the plaintiff lacked the authority to impose the property tax because such taxation is preempted by federal regulation of Indian gaming pursuant to both the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 (IGRA), and the Final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991), and that the taxation was an illegal interference with the Tribal Nation's sovereignty. The present action was filed on June 23, 2008, to collect unpaid personal property taxes for gaming equipment owned by the defendant and leased to the Tribal Nation for its gaming operations.

Our Supreme Court, in a previous appeal from the judgment of this court, recited the following additional relevant facts and procedural history: "[T]he plaintiff [in the present action] sought $18,251.23 in unpaid personal property taxes, plus costs, interest, and penalties. In addition, the plaintiff sought attorney's fees pursuant to . . . § 12-161a.

"Shortly after the plaintiff had commenced the underlying state action, the Tribal Nation filed [a second] action in the United States District Court for the District of Connecticut challenging the authority of the state of Connecticut[2] and the plaintiff to impose the taxes at issue in the present state action.[3] Although it was not a party to the federal action commenced by the Tribal Nation, the defendant filed a motion to stay the present

state action pending the outcome of the federal action, which the trial court, *Martin, J.*, granted.

"On March 27, 2012, the District Court ruled on cross motions for summary judgment filed in the . . . federal action. The District Court, determining that the authority of the state and the plaintiff to impose the taxes was preempted by federal law, granted the Tribal Nation's motion for summary judgment and denied separate motions for summary judgment filed by the plaintiff and the state . . . . See *Mashantucket Pequot Tribe* v. *Ledyard*, Docket No. 3:06CV1212 (WWE), 2012 WL 1069342, *12 (D. Conn. March 27, 2012), rev'd, 722 F.3d 457 (2d Cir. 2013). On July 15, 2013, the United States Court of Appeals for the Second Circuit reversed the District Court's judgment, concluding that the authority of the state and the plaintiff to impose the taxes was not preempted by federal law. See *Mashantucket Pequot Tribe* v. *Ledyard*, 722 F.3d 457, 477 (2d Cir. 2013).

"After the proceedings had resumed in the present state action, the parties executed a stipulation. Under the stipulation, the parties agreed that the defendant had tendered payment to the plaintiff for all outstanding taxes, accrued interest, and accrued penalties at issue. They further agreed that the plaintiff was entitled to reasonable attorney's fees and costs incurred in the underlying state action, the amount of which would be determined by the trial court and the payment of which would be accepted by the plaintiff as satisfaction of all of the taxes, interest, penalties, attorney's fees, and costs recoverable by the plaintiff with respect to the underlying state action. They disputed, however, whether the trial court could also find the defendant liable for attorney's fees incurred by the plaintiff in defense of the federal action commenced by the Tribal Nation to which the defendant was not a party . . . . The parties agreed to submit to the trial court the issue of whether the defendant was liable for the federal action attorney's fees.

"After executing the stipulation, the parties filed . . . motions for summary judgment as to liability only with respect to the federal action attorney's fees. On October 6, 2016, the trial court, *Vacchelli, J.*, issued its memorandum of decision granting the plaintiff's motion for summary judgment, denying the defendant's motion for summary judgment, and rendering . . . judgment as to liability only in favor of the plaintiff with respect to the federal action attorney's fees. The trial court concluded that the defendant was liable for the federal action attorney's fees pursuant to § 12-161a. The trial court further stated that the plaintiff could file a motion for attorney's fees within thirty days and that a hearing would be scheduled thereafter to determine the amount of the attorney's fees to which the plaintiff is entitled. Shortly thereafter, on October 11, 2016, the plaintiff

filed a motion for attorney's fees.

"On October 25, 2016, [before] the trial court [scheduled] a hearing on the plaintiff's motion for attorney's fees, the defendant appealed [from] the trial court's decision with respect to the federal action attorney's fees [to the Appellate Court]." (Footnotes added; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 330 Conn. 75, 78–80, 191 A.3d 983 (2018).

The plaintiff subsequently filed a motion to dismiss the appeal for lack of subject matter jurisdiction, which this court granted on the ground that the trial court's decision was not yet an appealable final judgment because it had yet to determine the amount of attorney's fees owed to the plaintiff. *Ledyard* v. *WMS Gaming, Inc.*, 171 Conn. App. 624, 635, 157 A.3d 1215 (2017), rev'd, 330 Conn. 75, 191 A.3d 983 (2018). Thereafter, our Supreme Court reversed the judgment of this court and remanded the case back to this court with direction to deny the plaintiff's motion to dismiss. *Ledyard* v. *WMS Gaming, Inc.*, supra, 330 Conn. 91. On remand, we now address the merits of the defendant's claim. Further facts will be provided as necessary.

We begin our analysis by setting forth the applicable standards of review and relevant legal principles. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material [fact] which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Perez* v. *Metropolitan District Commission*, 186 Conn. App. 466, 471–72, 200 A.3d 202 (2018).

The defendant's claim implicates the proper interpretation and application of § 12-161a, which is a question of law over which our review is plenary. See *Kaminsky* v. *Commissioner of Emergency Services & Public Pro-*

*tection*, 188 Conn. App. 109, 112, 203 A.3d 1252 (2019). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extra textual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 112–13. Moreover, because § 12-161a is a statute in derogation of the common-law American rule pursuant to which attorney's fees are not generally allowed to the successful litigant absent a contractual or statutory exception, it must be strictly construed and "limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Perry* v. *Perry*, 312 Conn. 600, 623, 95 A.3d 500 (2014). Mindful of these foregoing legal principles, we next address the defendant's claim.

In the view of the defendant, the trial court improperly rendered summary judgment in favor of the plaintiff because it adopted an expansive interpretation of § 12-161a that impermissibly permitted recovery for attorney's fees—those attributable to the federal action—which were not "directly related" to the present action. The defendant asserts that this is so because the federal action (1) involved a separate case brought against the plaintiff in another jurisdiction by the Tribal Nation, an entity that is not a party to the present action, (2) was brought to assert tribal sovereignty under federal law, not to contest the defendant's tax liability, and (3) was brought two years before the plaintiff filed the present collection action and would have been litigated regardless of whether the plaintiff brought the present claim. The plaintiff argues that the trial court correctly concluded that it was entitled to recover the attorney's fees attributable to the federal action because they were incurred "as a result of and directly related to" this collection proceeding within the meaning of § 12-161a. We agree with the defendant.

Our analysis begins, as it must, with consideration of the text of § 12-161a and its relationship to other statutes. See General Statutes § 1-2z. The phrase "as a result of" has been interpreted by our Supreme Court as synonymous with "proximate cause," that is, "[a]n actual cause that is a substantial factor in the [result] . . . ." (Internal quotation marks omitted.) *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d

709 (1997). The next consideration is that of the phrase "directly related." Clearly, we are not at liberty to construe the phrase "directly related" as identical with that of "as a result of" because that would render the former superfluous in violation of cardinal principles of statutory interpretation. See, e.g., *Williams* v. *Housing Authority*, 327 Conn. 338, 356, 174 A.3d 137 (2017). Instead, this additional modifier imports a more restrictive proximal nexus to the collection proceeding in which the attorney's fees are requested than the phrase "as a result of." The adverb "directly" means "in a direct manner" and "direct" is defined as "from point to point without deviation: by the shortest way . . . from the source without interruption or diversion . . . without an intervening agency . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 353; see *Board of Selectman* v. *Freedom of Information Commission*, 294 Conn. 438, 449, 984 A.2d 748 (2010) ("when . . . a statute does not define a term, we may look to the dictionary to determine the commonly approved meaning of the term"). Mindful of the restrictive effect of the phrase "directly related," we conclude that the attorney's fees attributable to the federal action are not directly related to the collection proceeding.

The federal action was a collateral action the resolution of which, although significant to the ultimate resolution of the tax collection issue in the present action, did not result directly in a final determination of the rights and obligations of the parties relative to the claimed delinquent tax. Given its restrictive language, only litigation fees incurred in the prosecution of the collection action itself would qualify as attorney's fees directly related to the collection proceeding as contemplated by § 12-161a.

This conclusion is supported by the claims that were at issue in the federal action. The Court of Appeals for the Second Circuit considered a number of defenses raised by the plaintiff and the state to the action, including the argument that it was barred by the Tax Injunction Act (TIA), 28 U.S.C. § 1341. The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Tribal Nation claimed an exception to the operation of the TIA as recognized by the United States Supreme Court that permitted Indian tribes to vindicate interests protected by federal legislation and federal programs. See *Moe* v. *Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 473, 96 S. Ct. 1634, 48 L. Ed. 2d 96 (1976). The Second Circuit agreed with the Tribal Nation, observing that "[i]nsofar as the [Tribal Nation] is suing on behalf of the third-party vendors [AC Coin and the defendant] who are the taxed parties, its suit (like theirs) is barred by the TIA. Here, the [Tribal Nation] is suing to defend against the [plaintiff's] and State's alleged encroach-

ment upon aspects of tribal sovereignty protected by the Indian Trader Statutes and IGRA." *Mashantucket Pequot Tribe* v. *Ledyard*, supra, 722 F.3d 464–65. Moreover, the Second Circuit rejected a claim that the Tribal Nation lacked standing to complain of the "monetary injury asserted by the taxed parties" because of the principle that "a tribe has an interest in protecting tribal self-government from the assertion by a state that it has regulatory or taxing authority over Indians and non-Indians conducting business on tribal reservations." (Internal quotation marks omitted.) Id., 463. Thus, far from incurring attorney's fees directly related to an action that would result in a final determination of the rights and obligations of the parties relative to the claimed delinquent tax, the attorney's fees in the federal action were incurred in a collateral deviation or diversion from such a final determination. Moreover, the attorney's fees in the federal action can hardly be viewed as directly related to the tax delinquency proceeding involving the defendant if they would have been incurred regardless of whether that proceeding had been initiated. Thus the plain meaning of the text of § 12-161a compels the conclusion that the attorney's fees attributable to the federal action are not directly related to the present action.

Our conclusion is further bolstered when considering the relationship of § 12-161a to other statutes. See General Statutes § 1-2z. A number of decisions from our Superior Court have considered the implications of the phrase "directly related" in the context of a similar statute, General Statutes § 12-193,[4] which authorizes recovery of, inter alia, attorneys' fees incurred by a municipality "as a result of" and "directly related" to the foreclosure of a tax lien. These decisions reflect the principle that the legislature's use of the adverb "directly" establishes a greater limitation on the nexus between the attorney's fees sought and the proceeding in which they are requested than that urged by the plaintiff in the present case. See *Milford Tax, LLC* v. *Paradigm Milford, LLC*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-14-6015774-S, 2015 WL 3875386, (May 28, 2015) (60 Conn. L. Rptr. 473) (prior bankruptcy proceedings involving foreclosed property not directly related to municipal tax foreclosure action); *Groton* v. *First Groton, LLC*, Superior Court, judicial district of New London, Docket No. CV-08-5008750-S, 2011 WL 1470809 (March 25, 2011) (fees attributable to prior actions to foreclose property by other lienors and bankruptcy proceedings initiated by other creditors not recoverable because not directly related to foreclosure action); *White Sands Beach Assn., Inc.* v. *Bombaci*, Superior Court, judicial district of New London, Docket No. CV-04-0568713-S, 2009 WL 1622788, (May 12, 2009) (trial of counterclaim questioning status of plaintiff quasi municipal corporation, and not the foreclosure of tax liens, not directly related

to foreclosure of tax lien); *Redding* v. *Elfire*, *LLC*, Superior Court, judicial district of Danbury, Docket No. CV-99-0337512-S, 2004 WL 3090656, (December 1, 2004) (attorney's fees incurred in related quiet title action brought by taxpayer not directly related to foreclosure action).[5]

Moreover, authority from our Supreme Court also lends support to our conclusion. The case of *Mechanics Savings Bank* v. *Tucker*, 178 Conn. 640, 425 A.2d 124 (1979), is instructive for its application of General Statutes § 49-7,[6] which "authorizes agreements contained in notes and mortgages to provide for the payment of attorney's fees incurred not only in collection of the debt or foreclosure of the mortgage, *but also 'in protecting or sustaining the lien of such mortgage.'*" (Emphasis added.) Id., 647. The defendant in *Mechanics Savings Bank* appealed from a judgment of strict foreclosure rendered against him. Id., 641. One of the issues on appeal was the award of attorney's fees to the plaintiff, which were attributable to collateral antitrust and bankruptcy proceedings brought by the defendant. Id., 647. The court held that because the antitrust action sought negation of the defendant's obligations under the note and mortgage, it constituted an action for the "protection of the lien of the mortgage within . . . § 49-7." Id., 648. It did not characterize that action as a "proceeding for the collection of the debt . . . ." General Statutes § 49-7. Similarly, the court found recoverable the attorney's fees attributable to the collateral bankruptcy proceedings even though they did "not impinge *directly* on valid security interests . . . ." (Emphasis added.) Id., 648. The attorneys' fees from the collateral actions were recoverable not because they *directly* derived from the "proceeding for collection of the debt," but because they were more properly characterized as actions to "protect or sustain the lien of the mortgage . . . ." General Statutes § 49-7.

It is also significant that § 49-7 distinguishes between a direct action to collect the debt and an action collateral to the direct action. Indeed, the legislature was free to utilize similar language in § 12-161a to enable the recovery of attorney's fees incurred from actions collateral to collection proceedings, but it declined to do so, instead electing to utilize the more restrictive wording "directly related" to bar such a possibility. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003).

Accordingly, we conclude that the trial court erred in granting the plaintiff's motion for summary judgment because it improperly applied an expansive interpretation of § 12-161a to characterize the attorney's fees incurred in the federal action as falling within the ambit of fees directly related to the collection proceeding presently before this court.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for summary judgment and to grant the defendant's motion for summary judgment.

In this opinion the other judges concurred.

[1] General Statutes § 12-161a provides in relevant part: "In the institution of proceedings by any municipality to enforce collection of any delinquent tax on personal property from the owner of such property, through . . . any other proceeding in law in the name of the municipality for purposes of enforcing such collection, such person shall be required to pay any court costs, reasonable appraiser's fees or reasonable attorney's fees incurred by such municipality as a result of and directly related to such levy and sale, enforcement of lien or other collection proceedings."

[2] The state of Connecticut intervened as a defendant in both actions.

[3] The Tribal Nation's second federal action was subsequently consolidated with its first federal action. See *Mashantucket Pequot Tribe* v. *Ledyard*, Docket No. 3:06CV1212 (WWE), 2012 WL 1069342 (D. Conn. March 27, 2012), rev'd, 722 F.3d 457 (2d Cir. 2013). For ease of discussion, we refer to these joined actions as the federal action.

[4] General Statutes § 12-193 provides in relevant part: "Court costs, reasonable appraiser's fees, and reasonable attorney's fees incurred by a municipality *as a result of* any foreclosure action brought pursuant to section 12-181 or 12-182 and *directly related thereto* shall be taxed in any such proceeding against any person or persons having title to any property so foreclosed and may be collected by the municipality once a foreclosure action has been brought pursuant to section 12-181 or 12-182. . . ." (Emphasis added.)

[5] One other decision of the Superior Court, *Monroe* v. *Mandanici*, Superior Court, judicial district of Fairfield, Docket No. CV-92-0293224-S, 1995 WL 107185 (March 2, 1995) (awarding attorney's fees for defending set off and counterclaim raised in foreclosure action that constituted defense thereto), is consistent with the subsequent line of cases because the related attorney's fees were incurred in the same action as the foreclosure.

[6] General Statutes § 49-7 provides: "Any agreement contained in a bill, note, trade acceptance or other evidence of indebtedness, whether negotiable or not, or in any mortgage, to pay costs, expenses or attorneys' fees, or any of them, incurred by the holder of that evidence of indebtedness or mortgage, in any proceeding for collection of the debt, or in any foreclosure of the mortgage, *or in protecting or sustaining the lien of the mortgage*, is valid, but shall be construed as an agreement for fair compensation rather than as a penalty, and the court may determine the amounts to be allowed for those expenses and attorneys' fees, even though the agreement may specify a larger sum." (Emphasis added.)